IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JAMES LEE MCELHANEY,            )
ID # 31261-177,                 )
                    Movant,     )          No. 3:07-CV-0191-L (BH)
vs.                             )          No. 3:03-CR-0370-L (01)
                                )          ECF
UNITED STATES OF AMERICA,       )          Referred to U.S. Magistrate Judge
                    Respondent. )

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, this case has been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

# I. BACKGROUND

## A. Nature of the Case

Movant, a current inmate in the federal prison system, brings this *Petition for Writ of Habeas Corpus by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255* ("Motion to Vacate") to challenge his federal conviction and sentence in Cause No. 3:03-CR-0370-L. The respondent is the United States of America ("Government").

## B. Initial Proceedings and Plea

On January 21, 2004, the Government indicted movant and his co-defendant, William Whisenant ("Whisenant"), for numerous federal offenses, including a count for wire fraud (Count 5), arising from alleged fraudulent real estate dealings. (*See* Superseding Indictment, doc. 30.)[1]

---

[1] Unless stated otherwise, all document numbers refer to the docket number assigned to the document in the underlying criminal action, No. 3:03-CR-0370-L.

Movant retained Jay Ethington ("Ethington") and Michael Gibson ("Gibson") to represent him. (*See* Docs. 7, 56.)

On August 30, 2004, movant signed an agreement to plead guilty to Count 5 and a factual resume in which he admitted facts sufficient to support his plea to that count. (*See generally* Plea Agreement, doc. 70; Factual Resume, doc. 71.) Upon the advice of his attorneys, movant agreed that the following facts are true and correct:

> From May 1998 through January 2002, defendant James L. McElhaney, who was the Vice President of Acquisition and Development of Triad Hospitals, Inc. (Triad), engaged in a scheme to defraud Triad by inserting fictitious fees and costs in [a] real estate transaction which benefitted him personally.
>
> During late 1999 and early 2000, Triad was seeking to purchase a parcel of land in Sherman, Texas, on which Triad could buil[d] a medical facility. An agreement was reached with an individual to purchase approximately 47 acres of undeveloped land in Sherman, Texas, for approximately $1.2 million. Defendant McElhaney and co-defendant William D. Whisenant devised a plan to defraud Triad by structuring the purchase and acquisition through a "landflip" involving a "strawman" intermediary whereby they fraudulently added approximately $750,000 into the cost of the property of which they paid $50,000 to the "strawman" and divided the rest between themselves.
>
> On July 27, 2000, McElhaney caused Triad to wire [transfer] $1,957,070.30, from its account at Wachovia Bank, in Charlotte, North Carolina, to an account of First Fidelity Title at Bank of Texas, N.A., Dallas, Texas, to fund and close the Sherman Hospital land acquisition, which included the approximately $750,000 that McElhaney and Whisenant had fraudulently inserted into the price of the property.

(Factual Resume at 1-2.)

On September 2, 2004, movant pled guilty to Count 5 before a United States Magistrate Judge. (*See* Tr. Rearraignment at 5-12, 22-31.) Movant persisted with his plea even though the Magistrate Judge inquired as to its voluntariness and the factual basis for it. (*Id.* at 30.) After such inquiries, the Magistrate Judge recommended that the District Judge accept the plea as voluntarily entered. (*Id.* at 31.) Movant had ten days to object to the recommendation, (*id.*), but filed no

objection. After a review of all relevant matters of record, the Court accepted the plea on September 30, 2004, and adjudged movant guilty as recommended. (*See* Doc. 80.)

## C. <u>Subsequent Proceedings and Attempt to Withdraw Plea</u>

On November 22, 2004, a United States Probation Officer ("USPO") prepared a Presentence Report ("PSR") reciting a calculated sentencing range of sixty-three to seventy-eight months imprisonment. Despite that calculated range, the PSR noted that the statutory maximum sentence for the charged offense was sixty months. On January 25, 2005, movant objected to the PSR and provided the USPO with a supplemental factual resume. The next day, movant filed a supplement that provided more details concerning the relevant events and omitted all reference to fraud. (*See* Supp. Factual Resume, doc. 111.) On February 7, 2005, the USPO prepared an addendum to the PSR in response to the objections that specifically recognized the United States Sentencing Guidelines as advisory only, noted that the supplemental factual resume did not impact the sentencing calculations, and found no reason to change the original calculations.

Just over a month later, the Court permitted Gibson to withdraw from the case. (*See* Order of Mar. 17, 2005, doc. 116.) Movant subsequently filed a motion to dismiss the indictment and a motion to withdraw his plea. (*See* Mot. Dismiss Indictment, doc. 117 (filed June 6, 2005); Notice Intention Withdraw Plea of Guilty, doc. 120, (filed Aug. 17, 2005) [hereinafter "Mot. Withdraw Plea"].)

At a September 26, 2005 hearing on the two motions, movant argued that "the gravamen of the offense charged is the receipt of undisclosed referral fees." (*See* Tr. Mots. to Withdraw Guilty Plea & to Dismiss Indictment [hereinafter "Tr. Withdraw Plea"] at 25.) The Court read the indictment more broadly. (*Id.*) Movant explained that although he did not dispute the factual allegations

of Count 5 because he took undisclosed referral fees as allowed by state law for licensed real estate brokers, he disagreed with the characterization of such conduct as fraudulent. (*Id.* at 36-38.) The Court found that the indictment sufficiently set forth allegations to charge a federal offense and orally denied the motion to dismiss. (*Id.* at 40.)

Movant also testified about the voluntariness of his plea and why he wanted to withdraw it. (*See id.* at 73-111.) While conceding that he pled guilty, he explained that he did so "under duress" because he was "forced" to sign an untrue factual resume and feared that his wife would be prosecuted for a federal tax offense. (*Id.* at 77-80.) He stated that the threat of a tax prosecution was "the only reason [he] pled guilty", and that he was "not guilty of any of the counts in th[e] indictment." (*Id.* at 80.) On cross-examination, he testified that he read and signed the plea agreement, and that it stated that he was voluntarily pleading guilty. (*Id.* at 82-86.) He conceded that according to the plea agreement, the factual resume was true, correct, and would be admitted as evidence against him. (*Id.* at 85-86.) He explained that he "was prepared to sign, say, do, whatever it took to protect [his] wife and family", including pleading guilty and signing a false factual resume as directed by Gibson. (*Id.* at 85, 89-90.) He conceded that he was questioned about the voluntariness and understanding of his plea, but explained that he involuntarily lied under oath at his rearraignment due to governmental coercion. (*Id.* at 91-94, 98, 102-03.) Upon questioning from the Court, he reiterated that the only reason he pled guilty was to protect his family, and that he had alleviated that concern by filing amended tax returns to correct underestimated income of approximately $400,000. (*Id.* at 98-100.) He testified that counsel filed a supplemental factual resume to correct inaccuracies in the original. (*Id.* at 78, 104.)

Gibson testified that (1) movant's plea was entered voluntarily and without coercion or

threat; (2) movant fully understood the charge, the consequences of pleading guilty, and his sentencing exposure; and (3) movant voluntarily signed the factual resume, although he did disagree with some matters stated therein. (*Id.* at 121-24, 134-35, 141-43.) Gibson also testified that he and movant "discussed the likelihood that [movant] would have a prison sentence." (*Id.* at 124.)

Based upon the relevant filings, applicable law, and the testimony presented at the September 2005 hearing, the Court issued a written opinion memorializing its ruling on the motion to dismiss and denying the motion to withdraw plea. *See United States v. McElhaney*, No. 3:03-CR-370-L, 2005 WL 3148234, at *1-6 (N.D. Tex. Nov. 17, 2005), *aff'd*, 469 F.3d 382 (5th Cir. 2006). In the opinion, the Court specifically rejected movant's contention that he involuntarily pled guilty and his position that he was actually innocent of the charged offense based upon his belief that his conduct was in conformance with applicable state law and did not violate federal law. *Id.* at *2-6. The Court later denied as frivolous a request for reconsideration of the oral denial of the motion to dismiss. *United States v. McElhaney*, No. 3:03-CR-370-L, 2005 WL 3215547, at *1-3 (N.D. Tex. Nov. 29, 2005), *aff'd*, 469 F.3d 382 (5th Cir. 2006).

**D.  Sentencing and Judgment**

In January 2006, the Court conducted a sentencing hearing. (Tr. Sentencing Vols. I and II.) Although it was abundantly clear that the Court would not dismiss the indictment against movant or permit him to prove his innocence at sentencing, (Tr. Sentencing Vol. I at 6-7), movant made no allegation of misinformation allegedly provided by defense counsel, (*see generally*, *id.* at 212-32). He continued to argue that what he did was not fraudulent even though he conceded that he engaged in the conduct for which he was charged under Count 5. (*See id.* at 218-28.)

The Court found the sentencing guidelines advisory in accordance with *United States v.*

*Booker*, 543 U.S. 220 (2005), overruled objections based upon loss amount, and considered whether movant had made a good faith effort to provide substantial assistance to the Government. (*See id.* at 36-40, 142-55, 275-85; Tr. Sentencing Vol. II at 293-97.) Movant requested probation. (Tr. Sentencing Vol. II at 299, 305.) The Government requested the statutory maximum sentence, *i.e.*, sixty months. (*Id.* at 300.) The Court calculated the sentencing range at fifty-one to sixty-three months imprisonment;[2] discussed the relevant sentencing factors under 18 U.S.C. § 3553(a); found a sentence of probation unwarranted; and orally announced imposition of a sixty-month sentence. (*Id.* at 306-13.) On January 4, 2006, the Court entered judgment on movant's guilty plea and sentenced him to sixty months imprisonment. (*See* Judgment, doc. 141.)

**E. Appeal**

Movant appealed the denial of his motion to withdraw his plea because he entered the plea involuntarily and because the Court should have dismissed the indictment under the Speedy Trial Act, 18 U.S.C. §§ 3161-74. *See United States v. McElhaney*, 469 F.3d 382, 383-84 (5th Cir. 2006). In affirming the conviction, the Fifth Circuit found that (1) the court did not abuse its discretion in denying the motion to withdraw; (2) movant waived any right to dismissal under the Speedy Trial Act by his voluntary plea of guilty; and (3) movant's claims of ineffective assistance of counsel were not ripe for appellate review because movant had not raised them to the district court. *Id.* at 383-86 & n.1.

**F. Federal Collateral Proceedings**

On January 29, 2007, the Court received the instant *pro se* motion to vacate pursuant to 28

---

[2] Because the Court found an obstruction enhancement unwarranted, its calculated range is lower than the USPO's calculated range.

U.S.C. § 2255 with an accompanying memorandum and exhibits in support.[3] (*See* Mot. Vacate at 1; Mem. Supp. at 1; Exs. Supp. at 1.) In six separate claims, movant claims that (1) he received ineffective assistance of counsel related to his plea, sentencing, and appeal (Claims 1, 2, 4, and 5); (2) the Government breached his plea agreement (Claim 3); and (3) his sentence exceeded the maximum allowed under the Sixth Amendment as interpreted by *United States v. Booker*, 543 U.S. 220 (2005), *Cunningham v. California*, 549 U.S. 270 (2007),[4] and other similar cases (Claim 6). (Mot. Vacate at 2-3; Mem. Supp. at 1-45; Supp. Mot. Vacate at 1-5.) The Government contends that the ineffective assistance and *Booker* claims have no merit, and that the breach of plea agreement claim is procedurally barred from federal collateral review. (Resp. Am. Mot. § 2255 [hereafter Resp.].) Movant thereafter filed a reply brief. (*See* Petr.'s Reply [hereinafter "Reply"].)

## II. SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the asserted error. *Id.* at 232. Even then, any new

---

[3] Movant also filed a *Motion for Court to Issue 'Order of Release of Prisoner' Forthwith* (doc. 20). The instant recommendation renders that application moot, and it is hereby **DENIED.**

[4] Movant supplemented his sixth claim after the Supreme Court decided *Cunningham v. California*, 549 U.S. 270 (2007). (*See* Supp. Mot. Vacate.)

assertion of error is limited to "issues of constitutional or jurisdictional magnitude." *Id.* The cause and prejudice test applies even to allegations of fundamental constitutional error. *Id.* The only exception to the application of the test is when a movant can establish a fundamental miscarriage of justice, *i.e.*, that he or she is actually innocent of the crime convicted. *Id.* Furthermore, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). In addition, a showing of ineffective assistance of counsel satisfies the cause and prejudice standard. *See United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).

## III. BOOKER CLAIM

Movant argues that his sentence violates the Sixth Amendment as interpreted by *United States v. Booker*, 543 U.S. 220 (2005); *Cunningham v. California*, 549 U.S. 270 (2007), and several other similar cases, including *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). (Mem. Supp. at 42, 44; Supp. Mot. Vacate at 2-5.)

Movant raised a similar objection to the PSR, albeit without reliance on *Cunningham*, which had not yet been decided. The objection prompted a statement in the PSR's addendum that the guidelines were used only in an advisory capacity. At sentencing, the Court overruled the objection based on *Booker* while recognizing that post-*Booker*, the sentencing guidelines were merely advisory. (*See* Tr. Sentencing Vol. I at 36-40.) Under the advisory sentencing regime established in *Booker*, "[t]he sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of

a non-Guidelines sentence." *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005); *accord United States v. Jauregui*, No. 05-50547, 2006 WL 2460762, at *1 (5th Cir. Aug. 21, 2006) (per curium) (following *Mares* and noting that, "[b]y rendering the Guidelines advisory, *Booker* eliminated the Sixth Amendment concerns that prohibited a sentencing judge from finding facts relevant to sentencing"). *Cunningham* has not altered this principle. *See, e.g., United States v. Mayberry*, 540 F.3d 506, 517 (6th Cir. 2008) (rejecting argument that *Cunningham* eliminates judicial fact finding at sentencing); *United States v. Ivory*, 532 F.3d 1095, 1003 (10th Cir. 2008) (same); *United States v. Savage*, 505 F.3d 754, 764 (7th Cir. 2007) (same); *United States v. Roti*, 484 F.3d 934, 937 (7th Cir. 2007) ("*Cunningham* . . . has no effect on post-*Booker* federal practice.").

For all of these reasons, movant's claim based upon *Booker*, *Cunningham*, and other similar cases does not entitle him to relief in this action filed pursuant to 28 U.S.C. § 2255.

## IV. VOLUNTARINESS OF GUILTY PLEA

Movant claims that based on the ineffective assistance of counsel, including threats that his family would be prosecuted for tax-related crimes, his plea was involuntary. (Mem. Supp. at 19, 25.) He further claims that the government's breach of the plea agreement makes his plea unknowing and unintelligent.[5] (Reply at 15-17.)

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the

---

[5] Relying on *United States v. Pope*, 467 F.3d 912 (5th Cir. 2006), the Government argues that movant has waived his challenge to the voluntariness of his plea because he did not raise these issues when he sought to withdraw his plea. (*See* Resp. at 10.) *Pope* is distinguishable, however, in that it dealt with a failure to raise issues or arguments in a prior hearing on a motion to suppress evidence. *See* 467 F.3d at 418-19. The Fifth Circuit relied in part on Fed. R. Crim. P. 12(b)(3)(C) to find that the defendant could not raise an argument for the first time on appeal. *Id.*

defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748). A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant."[6] *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the

---

[6] Rule 11 has undergone various changes over the years. Fed. R. Civ. P. 11 (West 2007) (showing various amendments including amendments in 1999 and 2002); *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (referring to Rule 11 as the "guilty-plea safeguards"); *United States v. Vonn*, 535 U.S. 55, 62 (2002) (recognizing the evolution of the rule over the past three decades).

required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea, including the waiver of his right to appeal, does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his or her plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

Nevertheless, "[t]he voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749).

> When examining the totality of the circumstances, a reviewing court should "consider the complexity of the charge, the defendant's level of intelligence, age and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government."

*United States v. Cross*, 57 F.3d 588, 591 (7th Cir. 1995) (citations omitted). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If

a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

In light of these principles, the Court examines the merits of movant's allegations that his plea was involuntary.

## A.  False Statements

Movant claims that he lied during his plea colloquy on the advice of counsel, and  that his attorneys conspired to suborn perjury.[7]  (Mem. Supp. at 12, 19, 27-28.)  He declares under penalty of perjury that his attorneys advised him to lie during rearraignment and sign the factual resume although it was not true.  (*See* Decl. of McElhaney ¶¶ 27-29, attached as Ex. A of Exs. Supp. )

Prisoners who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court.  *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Prisoners must also overcome a presumption of regularity and "great weight" accorded court records.  *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when deciding if a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

---

[7] This perjury argument appears connected to movant's contention that Gibson told him to say "no" when the Magistrate Judge asked about any threats, and to state that the original factual resume was true, when movant knew it was false. (*See* Mem. Supp. at 12, 27-28.)  He also contends that Gibson told him that a reference to threats during the plea colloquy only referred to threats of bodily harm.  (*Id.* at 27.)

One does not overcome the presumption of veracity by merely making a contrary statement in a motion to vacate or even in his own supporting affidavit or declaration. *See United States v. Cervantes*, 132 F.3d 1106, 1110-11 (5th Cir. 1998). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. To create a fact issue requiring an evidentiary hearing on the issue, the movant must produce "independent indicia of the likely merit of h[is] allegations, typically in the form of one or more affidavits from reliable third parties." *Cervantes*, 132 F.3d at 1110. An evidentiary hearing is likewise unnecessary if the movant's "showing is inconsistent with the bulk of h[is] conduct or otherwise fails to meet h[is] burden of proof in the light of other evidence in the record." *Id.*

In this case, the Magistrate Judge placed movant under oath at rearraignment, informed him of perjury consequences for falsely answering the Court's questions, and instructed him that his plea must not be induced by any threat or coercion, but must be purely voluntary and made only because "you are guilty and for no other reason." (*See* Tr. Rearraignment at 5, 7-8.) The Magistrate Judge also advised movant of the wire fraud charge lodged against him. (*Id.* at 22.) Movant stated that he understood the essential elements of the charge, admitted to committing each one, acknowledged that he had entered into a plea agreement with the Government, and affirmatively stated that he did so voluntarily and of his own free will. (*Id.* at 23-25.) He agreed that the plea agreement contained all terms of his agreement with the Government, no one had made any promise outside the written agreement in an effort to induce him to plead guilty, and no one had attempted to coerce him to plead guilty. (*Id.* at 25-26.)

After the Magistrate Judge summarized the plea agreement with emphasis on specific provi-

sions, such as the maximum term of imprisonment (five years) and maximum fine ($250,000 or twice the gain to movant or loss to any victim), movant stated that he understood the consequences of pleading guilty. (*Id.* at 26-27.) He understood he would be adjudged guilty of Count 5, and that the Court would impose punishment within the statutory range of punishment. (*Id.* at 26.) The Magistrate Judge stated on the record that the sentencing guidelines would apply and that there was no agreement as to what the sentence would be. (*Id.* at 27-28.) After the Magistrate Judge informed him that by pleading guilty he was waiving his right to appeal except in limited respects, movant stated that he understood his appellate rights and wished to waive them except in the stated limited circumstances. (*Id.* at 28-29.) Movant further stated the he understood that he would be bound by his plea even if the imposed sentence exceeded his expectations. (*Id.* at 29.)

With respect to the factual resume, movant stated that he had read it before signing it, and the facts stated therein were true. (*Id.* at 30.) Gibson also stated on the record that the factual resume was consistent with the true facts as he understood them. (*Id.*) Based upon the factual resume, the Magistrate Judge found a factual basis to support the guilty plea and each element of Count 5, and recommended that the District Judge accept the plea and adjudge movant guilty of the offense charged in Count 5. (*Id.* at 31.)

Although movant has extensively briefed the issues in his motion to vacate and has provided numerous exhibits to support his allegations, he provides nothing to overcome the presumption that he testified truthfully at rearraignment. Other than his own declaration, he provides no affidavit, declaration, or other paper given under oath or under penalty of perjury that addresses his alleged perjury at rearraignment.

In his motion to withdraw his plea, movant subsequently asserted the alleged perjury, (*see*

Mot. Withdraw Plea at 4-5; Aff. of McElhaney, attached to Mot. Withdraw Plea), and has provided sworn testimony regarding the assertion, (*see* Tr. Withdraw Plea at 90, 92, 98). In particular, while under oath at the hearing on his motion to withdraw his plea, movant testified that Gibson required him to knowingly sign a false factual resume. (*Id.* at 90.) He also testified that he lied at rearraignment about the veracity of the factual resume and when he stated that his plea was knowing, voluntary, and uncoerced. (*Id.* at 92.) He testified that coercion by the Government prompted his plea. (*Id.* at 80.) Upon questioning from the Court, he conceded that he "knowingly perjured [him]self" at rearraignment. (*Id.* at 98.)

As a government witness,[8] Gibson testified at the hearing that movant's plea was entered voluntarily and without coercion or threat. (*See* Tr. Withdraw Plea at 121-23.) According to Gibson, movant fully understood the charge, the consequences of pleading guilty, and his sentencing exposure. (*Id.* at 123-24, 141.) Although Gibson stated that movant disagreed with some matters in the factual resume, movant voluntarily pled guilty and voluntarily signed the factual resume. (*Id.* at 141-43.) Gibson testified that the supplemental factual resume was filed at movant's insistence, and that it accurately stated movant's position by deleting all references to a scheme to defraud. (*Id.* at 143-46.) Additionally, although movant had always thought the charges were invalid based upon his theory that an undisclosed referral fee does not constitute fraud, Gibson had no doubt as to the voluntariness of the plea or to the factual resume. (*See id.* at 122-23, 134-35, 141.)

The Court found Gibson more credible than movant. *United States v. McElhaney*, No. 3:03-CR-370-L, 2005 WL 3148234, at *4 n.6 (N.D. Tex. Nov. 17, 2005), *aff'd*, 469 F.3d 382 (5th Cir.

---

[8] Because movant selectively disclosed communications otherwise protected by the attorney-client privilege, he waived that privilege with respect to some communications between him and Gibson. *See United States v. McElhaney*, No. 3:03-CR-370-L, 2005 WL 3148234, at *4 n.6 (N.D. Tex. Nov. 17, 2005), *aff'd*, 469 F.3d 382 (5th Cir. 2006).

2006).  Based upon the signed plea agreement and the sworn plea colloquy, the Court found that movant "was aware of the consequences of his plea." *Id.* at *3.  In doing so, it necessarily found that he had not overcome the strong presumption of verity regarding the statements he gave at rearraignment.  *See id.* (noting that movant "made the above concessions in open court" and recognizing that "each carries a strong presumption of verity").  In addition, based in part on Gibson's testimony, the Court found movant's plea uncoerced by alleged governmental threats to prosecute movant's wife. *Id.* at *4.  Despite movant's contrary testimony and averments, it found that "the record indicates that McElhaney pleaded guilty in order to obtain the exact benefit of the bargain he received." *Id.* It further found that even if the Government had actually threatened to prosecute movant's wife, there was a good faith basis for opening the tax fraud investigation, and thus "to whatever extent McElhaney may have pleaded guilty solely to extricate his wife from possible tax fraud prosecution, his plea is still voluntary." *Id.*

In light of the prior proceedings in the criminal action against him, movant has not overcome the presumption of verity of his sworn statements made at rearraignment.  The Court rejected movant's prior attempt to overcome the presumption, and this attempt also fails.  "After a careful, detailed plea-taking proceeding such as appears in this record, a defendant will not be later heard to contend that he swore falsely."  *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975).

## B.  Coerced Plea

Movant claims that his plea was coerced by threats from his attorneys that his family would be prosecuted for tax-related crimes.  (Mem. Supp. at 19, 25.)

This claim is a twist on movant's prior coercion claim in his motion to withdraw his plea. There, movant asserted he "felt threatened and intimidated by the Government's suggestion of

prosecution being lodged against his wife." (Mot. Withdraw Plea at 3-4.) The Court specifically considered this assertion when it denied movant's request to withdraw his plea. *See United States v. McElhaney*, No. 3:03-CR-370-L, 2005 WL 3148234, at *3-4 (N.D. Tex. Nov. 17, 2005), *aff'd*, 469 F.3d 382 (5th Cir. 2006). It found that despite the perceived threat, movant voluntarily and knowingly pled guilty. *See id.* at *4. The Fifth Circuit also found the perceived threat insufficient for movant to withdraw his plea. *United States v. McElhaney*, 469 F.3d 382, 385-86 (5th Cir. 2006). Although movant now focuses on alleged coercion from his attorneys rather than the Government, such change does not alter the Court's prior analysis regarding the voluntariness of movant's plea. That counsel may have conveyed the perceived threat to movant likewise does not affect the voluntariness of the plea.

## C. Breach of Plea Agreement[9]

Movant also claims that a breach of his plea agreement violates his Fifth Amendment due process rights and makes his plea involuntary. (*See* Mem. Supp. at 1, 38-40.)

Relying on a letter from the United States Attorney's Office (*see* Letter from Roper and Senerote to Gibson of 9/2/2004,[10] attached as Ex. T to Exs. Supp. [hereinafter "Ex. T"]), movant contends that the Government agreed to move for a sentence reduction pursuant to USSG § 5K1.1 or recommend a sentence at the bottom of the applicable guidelines range. (Mem. Supp. at 39.)

---

[9] The Government contends that movant's breach of plea agreement claim is procedurally barred. Movant contends, however, that this claim goes to the voluntariness of his plea. (*See* Reply at 15.) Although he pled guilty and waived certain rights to appeal and collaterally attack his conviction, movant reserved the right to challenge the voluntariness of his plea. (*See* Plea Agreement at 4.) Accordingly, the Court addresses the claim in this context.

[10] Although movant characterizes his claim as a breach of plea agreement, the cooperation agreement was not included within the plea agreement. It was contained in the letter dated September 2, 2004, but it was faxed on September 1, 2004, according to fax markings. (*See* Ex. T of Exs. Supp.)

The letter states in pertinent part:

> This is to confirm that your client, James L. McElhaney, wishes to provide information . . . with respect to possible violations of the law . . ..
>
> If, in our sole estimate, his cooperation constitutes substantial assistance in the investigation or prosecution of another person who has committed an offense, we will file a § 5K1.1 motion to reduce his sentence, or if the results of his cooperation comes to fruition after he is sentenced, a Rule 35 motion. If he makes a good-faith effort at cooperation that does not arise [sic] to substantial assistance, we will recommend that he be sentenced to at [sic] the bottom end of his resultant guidelines.

(Ex. T.) At sentencing, Ethington indicated that movant and the Government had entered into a "cooperation agreement." (*See* Tr. Sentencing Vol. I at 276-77, 281.) The Government responded that it had no information to say that movant's cooperation rose to the level of substantial assistance or that movant had made a good-faith effort at cooperation.[11] (*See id.* at 279-84; Tr. Sentencing Vol. II at 293-94, 296-97.) In response to the motion to vacate, the Government argues that movant has not shown that it violated any promise or refused to abide by the cooperation agreement for any unconstitutional reason. (Resp. at 4-5.)

An unfulfilled promise may render a plea involuntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Nevertheless, when the written plea agreement does not set out the alleged unfulfilled promise, and such promise is inconsistent with representations made in open court, the defendant faces a heavy burden to obtain relief under 28 U.S.C. § 2255 on a claimed involuntary plea. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (relying on the presumption in *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977));

---

[11] The death of the Assistant United States Attorney and the withdrawal of Gibson complicated the good-faith determination. (*See* Tr. Sentencing Vol. II at 293-94.)

*United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (presumption of regularity of court documents and the great weight accorded to them by the courts).

1. *Section 5K1.1 Motion*

Pursuant to USSG § 5K1.1, the Government has a discretionary "power, not a duty, to file a motion when a defendant has substantially assisted." *Wade v. United States*, 504 U.S. 181, 184 (1992). In general, "this discretion is subject only to constitutional restraints, and therefore a federal district court's authority to review the refusal to move for a downward departure based on substantial assistance is limited to determining whether the refusal was animated by an unconstitutional motive." *United States v. Price*, 95 F.3d 364, 368 (5th Cir. 1996). Of course, "the government may bargain away its discretion . . . and thereby obligate itself to move for a downward departure in exchange for the defendant's substantial assistance." *Id.* When the Government "has bargained away its discretion, the only remaining inquiry is whether the aid rendered by the defendant constitutes substantial assistance as that term was reasonably understood by the parties at the time that they entered into the plea agreement." *Id.*

At sentencing, movant focused on his effort to provide substantial assistance, not on whether his assistance qualified as substantial. (Tr. Sentencing Vol. I at 280-89; Tr. Sentencing Vol. II at 293-97.) In ruling that movant had shown no good faith effort, (Tr. Sentencing Vol. II at 297), the Court implicitly found no substantial assistance on the record before it. Neither the sentencing record nor the filings in this § 2255 action show that movant provided substantial assistance. Accordingly, movant has not shown that the failure to move for a § 5K1.1 sentence reduction breached the cooperation agreement. The Court finds no breach of any agreement to make a §

5K1.1 motion, and further finds that the alleged breach did not render movant's plea involuntary.[12]

### 2. *Sentencing Recommendation*

Movant has also not shown that the Government breached any agreement to recommend that he be sentenced at the bottom of the applicable guidelines range. As found by the District Court at sentencing, the Government had no obligation "to argue or recommend to the Court that Mr. McElhaney be sentenced at the low end of the guidelines." (Tr. Sentencing Vol. II at 297.) The Court agreed that there was an insufficient basis to find that movant had made a good-faith effort to cooperate. (*Id.*) The failure to recommend a sentence at the bottom of the guidelines range did not render movant's plea involuntary.

## D. <u>Ineffective Assistance of Counsel</u>

Movant also claims that ineffective assistance of counsel renders his plea involuntary. He contends that his attorneys induced him to plead guilty by threatening that his family would be prosecuted for tax-related crimes and providing erroneous information about the prospects for probation and other matters. (Mem. Supp. at 19, 25.) He also claims that counsel's unfamiliarity with Texas real estate law prompted their advice to him to plead guilty. (*Id.* at 29.)

### 1. *Standard of Review*

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. A guilty plea is "open to attack on the ground that

---

[12] Notably, movant affirmatively stated at rearraignment that the plea agreement contained all terms of his agreement with the Government and no one had made any promise outside the written agreement in an effort to induce him to plead guilty. (Tr. of Rearraignment at 25-26.) As an alleged promise found outside the plea agreement, it thus appears that the alleged promise was not made to induce movant to plead guilty. The fact that the alleged promise arose after the plea agreement also indicates that it did not induce the plea.

counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). However, a "defendant's mere subjective understanding that he would receive a lesser sentence" does not render a plea involuntary. *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002).[13] The plea stands unless the expectation of a lesser sentence resulted from "a promise or guarantee by the court, the prosecutor or defense counsel." *Id.*

### a. *Strickland* Test

To successfully state a claim of ineffective assistance of counsel, movant must ordinarily demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice under *Strickland*, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[13] The Court does not cite *Daniels* for any proposition potentially abrogated in *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (abrogating reliance on a "significantly less harsh test" of prejudice for sentencing errors in the § 2255 context), to the extent that any such abrogation occurred. *See* 376 F.3d at 438 n.4 (specifically distinguishing *Daniel* because that case dealt with prejudice in the context of § 2254).

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Movants must "affirmatively prove prejudice." *Id.* at 693. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding"). In the context of a guilty plea, the *Strickland* "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). To satisfy this requirement, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58.

Although the *Strickland* test ordinarily applies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea, movant has alleged a conflict of interest and constructive denial of counsel. (*See* Mem. Supp. at 33-38.) Because these types of ineffective assistance claims are reviewed under different standards, the Court must initially determine whether movant's claims change the applicable standard of review.

### b. Conflict of Interest

When a prisoner shows an actual conflict that adversely affected his attorney's performance and thus denied him his Sixth Amendment right to effective assistance of "conflict-free counsel," *Cuyler v. Sullivan*, 446 U.S. 335 (1980) provides the applicable standard for evaluating claims of ineffective assistance of counsel. *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). A defendant may show ineffective assistance of counsel under *Cuyler* without showing prejudice. *Id.* at 781-82. "Courts of appeals applying *Cuyler* traditionally have couched its test in terms of two questions: (1) whether there was an *actual* conflict of interest, as opposed to a merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005). However, in 2002, the Supreme Court clarified that "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor,* 535 U.S. 162, 172 n.5 (2002). "Regardless of this clarification of the terminology, the relevant questions remain the same, and [the courts] must ask whether [defense counsel] labored under a conflict of interest, which was not merely hypothetical, and whether that conflict adversely affected the representation (*i.e.*, whether it was an actual conflict)." *Infante*, 404 F.3d at 392.

"A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Medina*, 161 F.3d 867, 870 n.1 (1998) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)) (alteration in original) (internal quotation marks omitted). There is no actual conflict of interest, however, unless "defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781.

The Fifth Circuit Court of Appeals has held that the *Cuyler* standard applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation. *See United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002); *Beets v. Scott*, 65 F.3d 1258, 1270-72 (5th Cir. 1995) (*en banc*). The standard enunciated in *Strickland* applies when a prisoner alleges a conflict of interest of a different ilk. *See id.* at 1272.

Here, movant contends that attorney Ethington's conflict was clearly reflected in the motion to withdraw plea because the motion alleged that movant's his plea was involuntary due to ineffective assistance of counsel. (Mem. Supp. at 34-35.) Movant characterizes the conflict as "proving an involuntary plea vs. possible disciplinary action or risk of a lawsuit." (*Id.* at 36.) Because the alleged conflict is premised on a conflict between Ethington's interests and that of movant, rather than between the interests of multiple clients, *Strickland* provides the proper standard of review, and prejudice is not presumed. *See Newell*, 315 F.3d at 516; *Beets*, 65 F.3d at 1270-72.[14]

### c. Constructive Denial of Counsel

In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court recognized that a defendant might be constructively denied counsel although an attorney had been appointed to represent him. 466 U.S. at 654 n.11 ("[T]he performance of counsel may be so inadequate" as to constitute no assistance of counsel at all). A defendant is constructively denied counsel when his attorney "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 659. However, unless there is a constitutional error of such magnitude that "no amount of showing of want of prejudice would cure" the error, "there is generally no basis for finding a Sixth Amendment violation" in

[14]Movant argues that based upon *United States v. Del Muro*, 87 F.3d 1078 (9th Cir. 1996), prejudice is presumed. (Reply at 21.) That case conflicts with the cited Fifth Circuit precedent, however.

the absence of a showing of "how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659 & n.26. Furthermore,

> [c]ircumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

*Id.* at 659-60.

The presumed prejudice standard of *Cronic* is reserved for "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658. The *Cronic* standard does not apply when defense counsel has merely failed to oppose the prosecution at specific points of the proceedings – it applies only when counsel has *entirely* failed to challenge the prosecution's case. *Bell v. Cone*, 535 U.S. 685, 697 (2002). When counsel provides "some meaningful assistance", the *Cronic* standard is inapplicable. *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986). Movant has the burden to show that he was constructively denied counsel. *See Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997).

In this instance, movant has not carried his burden to show that he was constructively denied counsel. The record shows that defense counsel subjected the prosecution's case to meaningful adversarial testing. Among other things, defense counsel negotiated a plea with the government, filed objections to the PSR, and called witnesses to testify on movant's behalf. Under these facts, counsel clearly provided more than "some meaningful assistance." The *Cronic* standard is thus inapplicable, and movant must satisfy the two-part *Strickland* test in order to succeed on his ineffective assistance claims.

## 2. *Alleged Coercion*

In this instance, movant alleges that his attorneys coerced him into pleading guilty. (Mem. Supp. at 19, 25-27.) Because the Court has already found no basis for movant's allegation that he was coerced into pleading guilty, it finds no deficiency of counsel and no ineffective assistance on this basis.

## 3. *Misinformation*

Movant also alleges that his attorneys induced him to enter a plea "which provided no strategic advantage or benefit to him" by erroneously informing him that (a) the original factual resume could be corrected with a supplemental factual resume; (b) he would be able to prove his innocence at sentencing; (c) the judge would dismiss the case at sentencing; (d) he would receive a sentence of probation if the case was not dismissed at sentencing; and (e) he could raise a juris-dictional challenge on appeal if the case was not dismissed. (Mem. Supp. at 19, 25, 28-30.)

For purposes of this § 2255 action, the Court assumes, without deciding, that counsel provided deficient representation by making the alleged representations.[15] *Strickland* requires both a deficiency of counsel and resulting prejudice, however. When an attorney allegedly provides

---

[15] There is a substantial dispute as to what counsel told movant. To support his version, movant relies on handwritten notes of Ethington (Ex. H at 25-26) and an e-mail (Ex. BC) dated three months after he pled guilty. (*See* Mem. Supp. at 29 (relying on Exs. H and BC of Exs. Supp.); Reply at 19 (identifying Ex. H as Ethington's notes).) The e-mail states in pertinent part:

> I will work the jurisdictional issue into our presentation, but doubt that it will be very persuasive to the Judge. It will be clear in the record, for appellate review purposes, that the inconsistency of a "non-disclosed referral fee and alleged fraud" should cause the Judge to either dismiss the case or impose a minimal sentence.

(*See* E-mail from Ethington to McElhaney of 12/28/2005.) Neither of the exhibits provide a definitive answer as to what movant was told prior to pleading guilty. The e-mail itself indicates that counsel anticipated an appeal of the jurisdictional argument and as to whether the District Court should dismiss the case or impose a minimal sentence. This indication does not support a finding that counsel told movant that the Court would dismiss the case or impose a minimal sentence. In addition, movant has provided correspondence that calls into question his recollection as to what he was told prior to pleading.

misinformation to a defendant prior to his plea, any potential prejudice may be cured during the plea colloquy. *See Lott v. Hargett*, 80 F.3d 161, 167-68 (5th Cir. 1996).

In this case, even assuming deficiency for purposes of the instant § 2255 action, the alleged misinformation does not amount to ineffective assistance of counsel in light of movant's affirmative statements at rearraignment and the specific admonitions of the Court to him. Movant has shown no reasonable probability that, at the time of his plea, he would have insisted on proceeding to trial in the absence of the alleged erroneous advice of counsel. Movant was advised through both the plea agreement and the plea colloquy that the statutory maximum sentence for the charged offense was five years imprisonment. Through the written document and the Court's questioning, movant likewise knew and understood that his plea limited his appellate rights. He knew and understood that the Magistrate Judge relied upon the factual resume to provide the necessary factual support for his plea. In addition, he stated that he understood that by pleading guilty he would be adjudged guilty – an understanding diametrically opposed to his position that he would be able to prove his innocence at sentencing. Such understanding also conflicts with his stance that the criminal case would be dismissed at sentencing. The Magistrate Judge, moreover, specifically informed him that he had ten days to lodge objections to finding that the plea was supported by adequate facts as provided in the factual resume.

It is clear that movant understood the nature of the charge against him and the consequences of his plea, including the waiver of his appellate rights except in limited circumstances. By pleading guilty movant avoided prosecution on fourteen counts of the superseding indictment, and he and his wife avoided prosecution for tax offenses. He thus reaped substantial benefits from the plea because he received the statutory maximum sentence for Count 5. Under the totality of circum-

stances, it appears that movant voluntarily entered his plea of guilty notwithstanding the alleged -representations of counsel.[16]

In addition, movant also made an unambiguous statement under oath during the hearing on his motion to withdraw his plea which completely forecloses any finding of prejudice from the alleged misinformation. At that September 2005 hearing, he unambiguously stated that governmental coercion was the *only* reason that he pled guilty. Because counsel asked some open-ended questions and the Court also engaged in questioning movant as to his basis for moving to withdraw his plea, he had ample opportunity to assert that misinformation from his attorneys caused him to involuntarily plead guilty. The absence of such assertion severely undercuts the alleged prejudice from his current allegations of ineffective assistance of counsel. In light of the clearly articulated reason for pleading guilty that movant previously gave under oath, movant has shown no reasonable probability that but for the alleged deficiencies of counsel, he would have insisted on pleading not guilty and proceeding to trial.

### 4. *Unfamiliarity with Texas Real Estate Law*

Movant claims that his attorneys rendered ineffective assistance of counsel when they advised him to plead guilty without an adequate understanding of how Texas real estate law impacted the transactions at issue. (Mem. Supp. at 29.)

In light of the plea colloquy, movant has shown no prejudice from the alleged deficiency of counsel. As a licensed real estate broker in Texas, movant knew about the workings of Texas real

---

[16] That movant continues to disagree that his conduct constitutes fraud does not affect his understanding of the charge or the consequences of the plea. Such disagreement merely exhibits a desire to challenge the merits of the charge, a challenge that is unavailable once a defendant voluntarily pleads guilty. Not only has the Court rejected movant's position multiple times already, it has stated that a challenge to the merits of the charge is not proper in light of movant's plea.

estate law. Despite his own knowledge of the real estate business, he pled guilty after the Magistrate Judge explained the elements of the federal wire fraud charge. There was no mistake that fraud was a necessary element of Count 5. Movant has not shown that but for the inadequate understanding of Texas law by his attorneys, he would have insisted on pleading not guilty and proceeding to trial. The Court, furthermore, has specifically rejected movant's theory that Texas real estate law made his conduct legal. *See, e.g., United States v. McElhaney,* No. 3:03-CR-370-L, 2005 WL 3215547, at *2 (N.D. Tex. Nov. 29, 2005), *aff'd,* 469 F.3d 382 (5th Cir. 2006).

In conclusion, the Court finds based on the totality of the circumstances that movant voluntarily and knowingly entered a plea of guilty to Count 5 of the superseding indictment against him, and no breach of any agreement, coercion, or ineffective assistance of counsel rendered his plea involuntary.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In addition to the claims of ineffective assistance of counsel that directly related to the voluntariness of his plea, movant also claims that he received ineffective assistance of counsel (A) before he pled guilty; (B) during his attempt to withdraw his plea; (C) at sentencing; and (D) on appeal. (*See* Mem. Supp. at 1, 20-38, 40-43.)

## A. Pre-plea Ineffective Assistance Claims

Movant claims that his trial attorneys rendered ineffective assistance when they (1) failed to adequately investigate relevant case law; (2) failed to file a motion to dismiss under the Speedy Trial Act; and (3) allowed him waive his right to a speedy trial without explaining the consequences of the waiver. (*Id.* at 1, 18, 20-24.)

1. *Failure to Investigate*

The alleged failure to adequately investigate case law is conclusory. Movant mentions this failure on the first page of his memorandum but never addresses it in detail. He does not identify the case law that would have been discovered or its impact on this case. The conclusory failure to investigate claim is insufficient to obtain collateral relief in this § 2255 action. *See, e.g.*, *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).

2. *Failure to Move to Dismiss Based on Speedy Trial Violation*

With respect to the failure of counsel to file a motion to dismiss based upon a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161-74, movant has demonstrated no violation of that Act. In general, the Act requires the Government to bring a defendant to trial within seventy days after the defendant is charged or makes an initial appearance. *See* 18 U.S.C. § 3161(c)(1). However, the Act provides a detailed scheme for determining whether specified periods of delay are counted. *See id.* § 3161(h). For example, § 3161(h)(1)(F) excludes from the seventy-day period any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." In addition, § 3161(h)(8)(A) excludes:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

In this instance, movant entered his appearance on October 28, 2003; the Court scheduled

trial for January 5, 2004; and movant filed motions to continue the trial on December 8, 2003; February 9, 2004; and March 22, 2004. (*See* Docs. 6, 18, 21, 40, 54.) By written order in compliance with § 3161(h)(8)(A), the Court granted each motion and respectively continued trial to February 23, 2004; April 5, 2004; and July 19, 2004. (*See* Docs. 24, 45, 55.) By written order in compliance with § 3161(h)(8)(A), the Court later *sua sponte* continued the July trial to September 13, 2004. (*See* Order of July 13, 2004, doc. 65.) In light of these continuances that are properly excluded under § 3161(h)(8)(A), seventy days did not elapse before movant pled guilty on September 2, 2004. Once movant pled guilty, the speedy trial clock halted, *see* § 3161(c)(1) and (h)(1)(I), and he waived his right to dismissal for any alleged speedy trial violation under § 3162(a)(2).[17] Counsel did not render deficient representation by failing to move for dismissal on an alleged speedy trial violation.[18]

Movant also argues that the second continuance is not excludable time because the Court failed to state its reasons for the continuance on the record. (Mem. Supp. at 23.) The Court's order, however, specifically states that movant sought the continuance so as "to conduct a full review of evidentiary materials that are critical and necessary to properly prepare for the trial." (*See* Order of Feb. 12, 2004.) The order also specifically cited to § 3161(h)(8)(B)(i) and (iv) as reasons for excluding the time from the speedy trial calculations. (*Id.*) The February 12, 2004 order sufficiently

---

[17]As reaffirmed by the Fifth Circuit when movant appealed his conviction, even claims related to an alleged violation of the Speedy Trial Act may be waived. *See United States v. McElhaney*, 469 F.3d 382, 386 (5th Cir. 2006); *accord* 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.").

[18] Movant argues briefly that counsel should have filed a motion for leave to file an untimely motion to dismiss due to the speedy trial violation. (Mem. Supp. at 24.) To the extent this constitutes a separate claim of ineffective assistance of counsel, it likewise fails. Because there was no speedy trial violation, counsel was not deficient in failing to file a motion for leave.

complies with the requirement for stating the reasons for the continuance on the record. The delay caused by this continuance is thus properly excludable from the speedy trial calculations.

Movant further argues that the *sua sponte* continuance is not excludable time because the Court essentially issued the continuance due to "general congestion of the court's calendar", which is not permitted under 18 U.S.C. § 3161(h)(8)(C). (Mem. Supp. at 23.) However, the Court's order sets forth reasons well beyond a general congestion of its calendar. (See Order of July 13, 2004.) Among other things, the Court cited § 3161(h)(8)(B)(iv) as a reason, and noted that the case involves multiple counts, was expected to last a week, and the Court and defense counsel had just concluded a month-long, complex criminal case. (*Id.*) The July 13, 2004 order adequately states the reasons for continuance on the record. The delay from the *sua sponte* continuance is properly excludable from the speedy trial calculations.

### 3. *Waiver of Right to Speedy Trial*

Movant's claim that counsel improperly allowed him waive his right to a speedy trial fails for want of prejudice even assuming deficiency of counsel. As found above, there was no violation of the Speedy Trial Act on the facts of this case because the Court entered written orders to continue the trial date in accordance with § 3161(h)(8)(A). Because a waiver is not necessary to exclude time under § 3161(h)(8)(A), *see Zedner v. United States*, 547 U.S. 489, 500-01 (2006); *United States v. Storey*, 927 F. Supp. 414, 415-16 (D. Kan. 1996), the purported waiver had no impact on the speedy trial calculations.

For all of these reasons, the pre-plea claims of ineffective assistance of counsel entitle movant to no relief under § 2255.

**B. Plea Withdrawal Ineffective Assistance Claims**

Movant raises four ineffective assistance of counsel claims related to the withdrawal of his plea:  (1) a failure to object to the recommendation that the District Court accept his plea; (2) a failure to timely file a motion to withdraw plea; (3) a threat to withdraw from case if movant insisted on moving to withdraw his plea; and (4) working under a conflict of interest at the hearing on the motion to withdraw plea.  (*See* Mem. Supp. at 1, 19, 31-38.)

As previously discussed, *Strickland* provides the proper standard for evaluating movant's claims of ineffective assistance of counsel.  Therefore, movant must show a deficiency of counsel and resulting prejudice.  466 U.S. at 687.  For alleged deficiencies of counsel that occur after a plea, movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

**1.  *Failure to Object to Recommendation***

Movant claims that his attorneys should have objected to the recommendation that the Court accept his plea as voluntary and supported by a factual basis because he wanted his attorneys to withdraw his plea the day after he entered it.  (Mem. Supp. at 31-32 & n.16.)  This claim is conclusory and unsupported by the evidence of record.  When the Court denied movant's motion to withdraw his plea, it specifically found that movant "first discussed his desire to withdraw his guilty plea with his attorneys on November 4, 2004, some two months after pleading guilty."  *See United States v. McElhaney*, No. 3:03-CR-370-L, 2005 WL 3148234, at *5 (N.D. Tex. Nov. 17, 2005), *aff'd*, 469 F.3d 382 (5th Cir. 2006).  This finding is consistent with an affidavit movant submitted in support of his motion to vacate.  (*See* Aff. Ethington, attached as Ex. B to Supp. Exs. ("Discussions and a decision to pursue a withdrawal of the plea began as early as November 2004.").)

Based on the Court's prior finding, counsel had no reason to object to the recommendation until after the District Court had already accepted it on September 30, 2004. The Court finds no deficiency of counsel in the failure to object to the recommendation.

### 2. *Failure to Timely File Motion to Withdraw Plea*

Movant also claims that his attorneys failed to timely file a motion to withdraw his plea and delayed filing it without any legal or practical justification for approximately eleven months. (Mem. Supp. at 31.)

As discussed by the District Court, the courts in the Fifth Circuit are guided by the seven factors set out in *United States v. Carr*, 740 F.2d 339 (5th Cir. 1984) when determining the propriety of a plea withdrawal after it has been accepted by the Court. *See United States v. McElhaney*, No. 3:03-CR-370-L, 2005 WL 3148234, at *2-3 (N.D. Tex. Nov. 17, 2005), *aff'd*, 469 F.3d 382 (5th Cir. 2006). In *Carr*, the Fifth Circuit found a motion to withdraw "not promptly filed" when the defendant delayed filing the motion for twenty-two days from entering his plea. 740 F.2d at 345. The Court concluded that each of the seven *Carr* factors, including the delay in filing, favored denying movant's motion. *See id.* at *3-6.

As mentioned previously, discussions between movant and his attorneys regarding plea withdrawal commenced on November 4, 2004, approximately two months after he pled guilty. *Id.* at *5. Had counsel filed the motion to withdraw on the day movant first discussed the matter with them, the delay would still weigh against granting the motion under *Carr*. The record reflects that movant had made no definite decision regarding withdrawing his plea even on November 30, 2004. (*See* Letter from McElhaney to Gibson and Ethington of 11/30/2004 (expressing disagreement about sixteen level sentencing enhancement and stating: "If I am not treated fairly, I will withdraw my

plea. I will make that decision no later than January 15.")  Moreover, even in the absence of any material delay, other factors weigh against granting the motion to withdraw, *i.e.*, entry of a knowing and voluntary plea and availability of adequate assistance of counsel.  Movant has demonstrated no reasonable probability that the outcome of the proceeding would have differed had counsel not delayed in filing the motion to withdraw.

The Court finds no prejudice to movant from the delay in filing the motion to withdraw his plea., and his claim of ineffective assistance of counsel necessarily fails.

### 3. *Threat to Withdraw from Case*

Based on a February 23, 2005, movant argues that counsel rendered ineffective assistance by threatening to quit representing him if he were to pursue a motion to withdraw his plea.  (*See* Letter from Gibson and Ethington to McElhaney of 2/23/2005, attached as Ex. O to Exs. Supp. [hereinafter "Ex. O"]; Mem. Supp. at 34.)

The Court finds no deficiency of counsel inherent in the February 23, 2005 letter.  The letter does not appear to be a threat to cease representation should movant pursue his desire to file a motion to withdraw his plea; it instead appears to be a proper attempt to alert movant of a potential conflict of interest that would necessitate the attorneys' withdrawal from representation.  The letter also did not prejudice movant in any respect.  In early March 2005, movant terminated the employment of Gibson.  Ethington continued to represent movant and filed a motion to withdraw plea. Because there is neither a deficiency of counsel nor prejudice from the February letter, this claim entitles movant to no relief under § 2255.[19]

---

[19] Movant's reliance on *United States v. Estrada*, 849 F.2d 1304 (10th Cir. 1988) and *Heiser v. Ryan*, 951 F.2d 559 (3d Cir. 1991) is misplaced.  *Heiser* involved an attorney's threat to withdraw from a case if the client did not plead guilty. *See* 851 F.2d at 560-62.  *Estrada* involved a threat to withdraw if the client backed out of a plea agreement prior to a plea

### 4. *Conflict of Interest*

Movant claims that if the February 23, 2005 letter does not exhibit ineffective assistance of counsel, then it necessarily establishes that Ethington operated under a conflict of interest when he represented movant during the hearing to withdraw his plea because movant was alleging ineffective assistance from counsel, including Ethington. (Mem. Supp. at 34-38.) He provides various drafts of documents filed with the Court to show material changes to the documents to mask or de-emphasize the alleged ineffective assistance of counsel. (*Id.* at 35-36 (referring to differing drafts of the motion to withdraw (Exs. I-2 and I-3) and movant's supporting affidavit (Exs. Q-1 and Q-2).) He suggests that Ethington knew he had a conflict because of those changes and because his file contained two copies of *United States v. Henderson*, 72 F.3d 463 (5th Cir. 1995).[20] (*Id.* at 36-37.) He argues that when faced with the conflict, Ethington should have withdrawn from representation and testified as a witness. (*Id.* at 36.) He contends that the failure to do so is ineffective assistance. (*Id.*)

A review of the exhibits provided in support of the motion to vacate, particularly Exs. I-2, I-3, O, P, N-1, and N-2, support an inference that Ethington's continued involvement with movant's attempt to withdraw his plea presented a potential conflict of interest. Ethington certainly knew that movant believed that both he and Gibson provided ineffective assistance. (*See* E-mail from

---

hearing. *See* 849 F.2d at 1305. A threat made prior to entry of plea may render a plea involuntary, but the alleged threat here occurred well after movant entered his plea, and is thus immaterial to the voluntariness of movant's plea. Neither *Estrada* nor *Heiser* support finding counsel ineffective on the facts of this case.

[20] In *Henderson*, the defendant sought to withdraw his plea on the basis of ineffective assistance of counsel, counsel continued to represent the defendant even at the hearing on the motion to withdraw the plea, and the Fifth Circuit noted that "[t]here is every indication that Henderson's counsel provided adequate assistance during the hearing." *See* 72 F.3d at 465-66. The Fifth Circuit based that indication on recorded facts that counsel had "called Henderson to testify and asked open-ended questions to allow Henderson to fully develop his claim" and that the court thoroughly questioned Henderson so as to give him the opportunity to articulate all of his complaints. *Id.* at 466.

McElhaney to Ethington of 7/24/2005, attached as Ex. AL to Exs. Supp. [hereinafter "Ex. AL"] (notifying Ethington of alleged mistakes he made in representing movant).) Nevertheless, the presence of *Henderson* in his case file demonstrates that Ethington researched the case in June and August 2005, which coincides with the filing of the motion to dismiss the indictment in July 2005 and the motion to withdraw plea in August 2005.[21] Rather than exhibiting a deficiency of counsel, the presence of *Henderson* reveals a concerted effort to research the conflict issue to determine the proper course of action. Despite a potential conflict between the interests of counsel and client, *Henderson* expressed no view that the attorney rendered deficient representation by staying on the case. Based on *Henderson*, an attorney could reasonably believe that he could permissibly stay on a case so long as he allowed his client to fully develop his claim at the hearing to withdraw plea. The letter of February 23, 2005, alerted movant about the potential conflict, yet he took no action to obtain different counsel. Although he accused Ethington of ineffective assistance of counsel in the July 24, 2005 e-mail, he steadfastly stated: "I want you as my attorney and I am more confident than ever." (*See* Ex. AL.) His actions viewed as a whole demonstrates that he agreed to Ethington's continued representation. For all of these reasons, movant has not overcome the strong presumption that counsel's conduct fell outside the range of reasonable assistance.

Further, movant has demonstrated no prejudice from that decision. Movant testified at the hearing to withdraw his plea. (Tr. Withdraw Plea at 72-112.) He submitted a signed affidavit with the motion in which he could have asserted each of his reasons for withdrawing the plea. (*See* Aff. of McElhaney, attached to Mot. Withdraw Plea.) Even if the affidavit resulted from the combined

---

[21] Markings from Westlaw indicate the date of the research.

effort of movant and Ethington, movant had the final say as to its contents when he chose to sign it. At the hearing, Ethington asked open-ended questions so that movant could elaborate on the nature of his complaints.[22] (*See* Tr. Withdraw Plea at 75-77 ("Tell the Court in your own words . . .."; "Will you explain to the Court whether or not you [pled guilty] with an open mind voluntarily and of your own free will?").) The Court also questioned movant regarding his reasons for seeking to withdraw his plea. (*See id.* at 98-100.) In addition, because movant had retained two attorneys – one of which had been removed from the case by the time of the hearing – Ethington had the unusual ability to interrogate a former attorney that had been involved in the case. (*See id.* at 115-47.) In view of all of these facts, the Court finds no prejudice to movant from Ethington's decision to stay on the case.

Movant argues that had counsel withdrawn from the case, he could have testified as a witness to support the withdrawal of the plea. (Mem. Supp. at 36.) Movant, however, provides nothing to show that Ethington would have testified, and has provided no affidavit from Ethington as to what his testimony would have been had he testified at the hearing. Gibson testified as a government witness at the hearing, and provided testimony that did not support movant's position. The Court found Gibson credible. There is no reason to believe that Ethington would have provided sufficient testimony to alter the ruling on the motion to withdraw plea. In the absence of a sworn recitation of the contents of such testimony, it is entirely speculative as to whether Ethington's testimony would have made a difference to the outcome of the plea withdrawal. Ineffective assistance of

---

[22] Movant argues that Ethington did not ask open-ended questions as required by *Henderson*. (Mem. Supp. at 37.) While Ethington asked a mixture of open-ended and specific questions, *Henderson* does not require that all questions be open-ended. *Henderson* merely requires that the questioning give movant an adequate opportunity "to fully develop his claim" and to fully state his complaints. *See* 72 F.3d at 465-66.

counsel is not properly premised on speculation or conjecture.[23]

In summary, the alleged conflict of interest does not equate to ineffective assistance of counsel, and thus does not entitle movant to § 2255 relief.[24]

## C.  Ineffective Assistance During Sentencing

Movant alleges that his attorney rendered ineffective assistance during sentencing when the attorney allowed him to be subjected to "an increased prison term and restitution order based on an overstated and legally unproven restitution amount." (Mem. Supp. at 41.)  He contends that counsel should have objected to a clear violation of Fed. R. Crim. P. 23(a).  (*Id.*)  He also briefly asserts that his attorney should have objected to the Government's breach of the cooperation agreement. (*Id.* at 1.)

To successfully state a claim of ineffective assistance of counsel at sentencing, movant must satisfy the well-established two-prong test enunciated in *Strickland* – he must demonstrate deficient conduct by his attorney and resulting prejudice.  *See* 466 U.S. at 687.  In the context of ineffective assistance of counsel at sentencing, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney.  *Glover v. United States*, 531

---

[23]  The Government has provided an affidavit from Ethington which shows that his testimony would not have been favorable.  (*See* Aff. Ethington, attached to App. Resp. to Mot., doc. 17 in civil case.)  The Court merely points out the affidavit to note that the record contains a directly contrary sworn statement from Ethington.  It does not make any credibility determination regarding the affidavit or rely on it to dispose of any issue in this § 2255 action.

[24]  Movant also argues that the Court should have been aware of the potential conflict of interest and taken steps to address it.  (Mem. Supp. at 37.)  Because movant's voluntary plea waived his right to bring any claim in this § 2255 action other than one to challenge the voluntary nature of the plea or one for ineffective assistance of counsel, the Court finds this argument waived.  Movant cites at least one case, *United States v. Morris*, 259 F.3d 894 (7th Cir. 2001), which seems to indicate that ineffective assistance of counsel may be shown where the district judge knew of the potential conflict of interest but made no inquiry into it.  Not only is *Morris* not binding on this Court, but it relies on case law that presumes prejudice from the alleged conflict of interest.  Under Fifth Circuit precedent there is no presumption of prejudice for the type of conflict presented by the facts of this case.

U.S. 198, 200-04 (2001). In other words, the movant must show that counsel's deficiencies created

a reasonable probability that his sentence would have been less harsh. *See id.* at 200.

### 1. *Restitution*

Movant appears to assert a claim of ineffective assistance of counsel based upon restitution

that was imposed at sentencing. (*See* Mem. Supp. at 41-42.) This claim is not cognizable in this §

2255 action because it does not relate to unlawful custody. *See United States v. Segler*, 37 F.3d 1131,

1137 (5th Cir. 1994). Furthermore, a claim of ineffective assistance concerning restitution has no

merit due to a lack of prejudice.

> [W]hen a prisoner asserts an ineffective assistance of counsel claim under § 2255, he
> must satisfy *Strickland's* prejudice requirement by showing harm that relates to his
> custody. That is, if counsel's constitutionally insufficient assistance affected the trial
> court's guilt determination or the sentencer's imposition of a prison term, a prisoner's
> ineffective assistance of counsel claim falls within the scope of § 2255; if . . . it relates
> only to the imposition of a fine [(or restitution)], his claim falls outside § 2255.

*Id.* The alleged ineffective assistance claim based upon restitution does not entitle movant to relief

in this action.

### 2. *Failure to Object to Rule 23(a) Violation*

Movant also claims that his attorney failed to object to a violation of Fed. R. Crim. P. 23(a).

(Mem. Supp. at 41.) He argues that the failure foreclosed appellate review. (*Id.* at 42.)

Rule 23(a) provides that "[i]f a defendant is entitled to a jury trial, the trial must be by jury

unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the

court approves." As movant concedes, he waived his right to trial by jury by pleading guilty in this

case. (*See* Mem. Supp. at 41.) The government consented and the Court approved the guilty plea.

There was no violation of Rule 23(a), so counsel had no basis to object. The failure to object does

not constitute deficient representation, and the claim of ineffective assistance necessarily fails.

### 3. *Failure to Object to Breach*

Movant also alleges that Ethington should have objected to the Government's breach of the cooperation agreement. (Mem. Supp. at 1.) This Court has found no breach of that agreement. Consequently, the failure to object does not constitute deficient representation. Moreover, at sentencing, counsel unsuccessfully sought a sentence reduction based upon that agreement. (*See* Tr. Sentencing Vol. I at 280-89; Tr. Sentencing Vol. II at 293-97.) His conduct falls within the broad range of reasonable assistance of counsel, and this claim entitles movant to no § 2255 relief.

## D. <u>Cumulative Impact</u>

Movant further claims that he received ineffective assistance of counsel due to the cumulation of errors of his trial attorneys. (Mem. Supp. at 43-44.)

The Fifth Circuit has recognized the concept of cumulative error in the context of 28 U.S.C. § 2254. *See Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc). To the extent such concept applies in the context of § 2255, movant must establish errors in the conduct of his federal criminal proceedings that may be cumulated. *See United States v. Spencer*, Nos. 3:05-CV-1858-L, 3:00-CR-0389-L(03), 2006 WL 489089, at *1-2 (N.D. Tex. Feb. 28, 2006). Movant has not established any errors. He merely complains about matters that do not individually or in combination amount to ineffective assistance of counsel. Movant's claim of cumulative error entitles him to no relief under 28 U.S.C. § 2255.

## E. <u>Ineffective Assistance on Appeal</u>

Movant also claims that his appellate attorney rendered ineffective assistance by failing to raise a claim under the Sixth Amendment. (Supp. Mot. Vacate at 4.) He contends that *Cunning-*

*ham v. California*, 549 U.S. 270 (2007) applies to this case and sets his maximum sentence at twenty-eight months. (*Id.* at 3.) *Cunningham* had no effect on the holding in *Booker*, however. Furthermore, *Booker* did not change the definition of "statutory maximum" used in waivers of appellate rights. *United States v. Bond*, 414 F.3d 542, 545-46 (5th Cir. 2005). Based on his waiver of appellate rights, movant had no basis to raise a claim based upon *Booker* or *Cunningham*.

To be effective, counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether movant's appellate counsel was deficient, the Court thus must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Appellate counsel failed to raise movant's claim regarding the Sixth Amendment. This claim, however, had insufficient merit to warrant raising it on appeal. In addition, the claim does not fall within the limited right of appeal preserved after movant voluntarily pled guilty. (*See* Plea Agreement at 4 (indicating that movant only reserved the right to appeal (a) any punishment imposed in excess of a statutory maximum; (b) any upward departure from the guideline range deemed applicable by the Court; or (c) any arithmetic error at sentencing).) An appellate attorney does not render ineffective assistance when he or she fails to assert a claim that falls outside the

limited right of appeal preserved after a voluntary plea.

## VI. EVIDENTIARY HEARING

Section 2255 of Title 28 of the United States Code controls whether an evidentiary hearing is required in this case. The statute provides that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b). Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary. In this instance, the matters reviewed by the Court conclusively show that movant is entitled to no relief. In conducting this review, the Court has made no independent finding on any controverted issue of fact despite conflicting affidavits submitted by movant and his trial attorneys.

## VII. RECOMMENDATION

For the foregoing reasons, the Court should **DENY** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 with prejudice.

**SIGNED this 18th day of October, 2008.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE